UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:16-CV-00058-GNS

CINDY MITCHELL PLAINTIFF

v.

LUPIN PHARMACEUTICALS, INC. DEFENDANT

**MEMORANDUM OPINION & ORDER**

This matter is before the Court on Defendant's Motion to Dismiss (DN 8), and it is ripe for adjudication. For the reasons below, the motion is **GRANTED**.

## I. STATEMENT OF FACTS

Defendant Lupin Pharmaceuticals, Inc. ("LPI") distributes FDA-approved generic levetiracetam tablets in various strengths. (Def.'s Mem. Supp. Mot. Dismiss 2, DN 8-1 [hereinafter Def.'s Mem.]). Levetiracetam is a prescription drug and is bioequivalent to its reference listed drug, Keppra. (Def.'s Mem. 4). Plaintiff Cindy Mitchell ("Mitchell"), proceeding *pro se*, alleges that her use of levetiracetam 500-milligram tablets caused her "bedwetting problems and gastrointestinal issues." (Compl. 5, DN 1). In her response to LPI's motion, Mitchell states that she "now has ulcers because of this medication" and that she "never had bedwetting issues until [she] consumed this medication." (Pl.'s Resp. Def's Mot. Dismiss 1, DN 12). Mitchell has not specified when she was prescribed levetiracetam, the name of the prescribing physician, how long she has used levetiracetam, or whether she is still using levetiracetam. Nevertheless, she seeks $180,000 in damages "due to gastrointestinal issues and having to buy a new mattress due to this med causing bedwetting issues." (Compl. 5).

## II. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1332(a)(1) because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P 12(b)(6). When considering a motion to dismiss, the Court must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citing *Great Lakes Steel v. Deggendorf*, 716 F.2d 1101, 1105 (6th Cir. 1983)). The Court, however, is not required to accept "[u]nwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). That being said, federal courts apply a less-stringent standard to *pro se* pleadings, which are to be liberally construed. *Mitchell v. Qualitest Pharms.*, No. 5:15-CV-148-TBR, 2016 U.S. Dist. LEXIS 60332, at *4-5 (W.D. Ky. May 6,

2016) (citation omitted). A court's duty to be less strict with *pro se* complaints, however, "[d]oes not require [it] to conjure up unpled allegations." *Id.* at *5 (citation omitted).

## IV. DISCUSSION

Mitchell failed to plead any specific causes of action in her complaint. Liberally construing the allegations it contains, the Court finds that Mitchell alleges claims for failure to warn and design defect under Kentucky's Product Liability Act ("PLA"). The PLA allows plaintiffs to bring product liability actions. *See* KRS 411.300(1)-(2). A products liability action is any action alleging "personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, testing, listing, certifying, warning, instructing, marketing, advertising, packaging or labeling of any product." KRS 411.300(1). The PLA governs "[a]ll damage claims arising from the use of products, regardless of the legal theory advanced." *Monsanto Co. v. Reed*, 950 S.W.2d 811, 814 (Ky. 1997).

LPI argues that Mitchell's "claims" are preempted by federal law. Federal preemption of state law stems from Article VI, Section 2 of the Constitution of the United States, which is known as the Supremacy Clause. *State Farm Bank, FSB v. Reardon*, 539 F.3d 336, 341 (6th Cir. 2008). The Supremacy Clause deems the laws of the United States as the "the supreme Law of the Land" and provides that "the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

There are two basic flavors of preemption, express and implied. *State Farm Bank*, 539 F.3d at 341 (citing *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 152-53 (1982)). Implied preemption has, in turn, been divided into two subcategories—field preemption and conflict preemption. *Id.* at 342 (citing *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98

(1992)). "Field preemption exists where the scheme of federal regulation is so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (internal quotation marks omitted) (quoting *Gade*, 505 U.S. at 98). On the other hand, conflict preemption is found "where compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (internal quotation marks omitted) (quoting *Gade*, 505 U.S. at 98). "Where state and federal law 'directly conflict,' state law must give way." *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011) (quoting *Wyeth v. Levine*, 555 U.S. 555, 583 (2009) (Thomas, J., concurring)).

LPI relies on conflict preemption. It notes that under federal law, manufacturers of generic drugs cannot unilaterally alter their labeling and design of their products and, as a result, state laws imposing heightened warning or design standards on generic drug manufacturers are in direct conflict with federal law because it is impossible to comply with both. Before the Court can address Mitchell's claims, a brief review of federal law governing generic drugs is warranted.

**A. Federal Regulation of Generic Drugs**

All prescription drugs must be approved by the Food and Drug Administration ("FDA") before they can be introduced into the market. *Fulgenzi v. PLIVA, Inc.*, 711 F.3d 578, 581 (6th Cir. 2013). Under the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301-399f, brand-name-drug manufacturers seeking to introduce a new drug must submit a New Drug Application to the FDA "[t]hat demonstrates safety and effectives through clinical trials, 21 U.S.C. § 355(b), (d), and provides a label to explain the proper use and possible risks of the drug, 21 U.S.C. § 352(f)(2)." *Fulgenzi*, 711 F.3d at 581. Generic-drug manufacturers, on the other hand, must

submit an Abbreviated New Drug Application ("ANDA"). 21 U.S.C. § 355(j). Congress codified the ANDA procedure with the passage of the Drug Price Competition and Patent Term Act (the Hatch-Waxman Amendments), Pub. L. No. 98-417, 98 Stat. 1585 (1984). *Fulgenzi*, 711 F.3d at 581.

The ANDA procedure establishes an expedited FDA review process, "allow[ing] manufacturers to develop generic drugs inexpensively, without duplicating the clinical trials already performed on the equivalent brand-name drug." *Mensing*, 564 U.S. at 613. To receive FDA approval under the ANDA procedures, the generic-drug manufacturer must demonstrate that the generic drug it seeks to introduce is approved as a listed drug—i.e., the drug upon which the generic drug is based already has FDA approval. 21 U.S.C. § 355(j)(2)(A)(i). The generic drug must have the same active ingredients as the listed drug and be "bioequivalent." 21 U.S.C. § 355(j)(2)(A)(ii)-(iv). Additionally, the manufacturer must supply "information to show that the labeling proposed for the [generic] drug is the same as the labeling approved for the listed drug . . . except for changes required because of differences approved under a petition filed under subparagraph (C) or because the generic drug and the listed drug are produced or distributed by different manufacturers . . . ." 21 U.S.C. § 355 (j)(2)(A)(v). Thus, while a brand-name manufacturer is responsible for the "accuracy and adequacy" of its warnings, a generic-drug manufacturer seeking new drug approval need only "ensur[e] that its warning label is the same as the brand name's." *Mensing*, 564 U.S. at 613.

Federal law imposes a continuing duty of "sameness" on generic-drug manufacturers; they cannot change their labels except "[t]o match an updated brand-name label or to follow the FDA's instructions." *Id.* at 613; *Fulgenzi*, 711 F.3d at 581. Likewise, generic manufacturers cannot change the design of their generic drug, "as it must remain 'identical in active ingredients,

safety, and efficacy' to the brand-name drug." *Mitchell*, 2016 U.S. Dist. LEXIS 60332, at *10 (quoting *Mensing*, 564 U.S. at 612 n.1).

**B. <u>Preemption</u>**

The Supreme Court addressed whether federal law preempts failure-to-warn claims under state law in *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011). In *Mensing*, the respondents alleged that the label of a generic drug did not adequately warn consumers of the drug's risk. *Id.* at 610. The Court noted that the parties did not dispute that, if respondent's allegations were true, "state law required the [m]anufacturers to use a different, safer label." *Id.* at 612. After examining the FDCA, however, the Court explained that the labels on generic drugs must be identical to those of their brand name counterparts. *Id.* at 613. Any changes to a generic drug's label—aside from those necessitated by a change to the brand-name label or instructed by the FDA—would conflict with the ongoing federal duty of sameness imposed on generic drug manufacturers. *Id.* at 614-15. The Court concluded that "it was impossible for the [m]anufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same." *Id.* at 618. Therefore, the Court held that state tort law failure-to-warn claims against generic drug manufacturers are preempted by federal law. *Id.* at 624.

The Sixth Circuit applied *Mensing* to Kentucky law in *Smith v. Wyeth, Inc.*, 657 F.3d 420 (6th Cir. 2011). In *Smith*, the court upheld the trial court's dismissal of the plaintiffs' failure-to-warn claims against generic drug manufacturers under Kentucky's PLA. *Id.* at 422. In so doing, the court found that *Mensing* preempted the claims because the plaintiffs, like those in *Mensing*, "predicated the manufacturer's liability under state law on the failure to provide adequate warnings on the product's label." *Id.* at 423. The court noted that the Supreme Court was unequivocal in holding that "federal law preempts state laws that impose on generic-drug

manufacturers the duty to change a drug's label, thus barring the plaintiffs' state-law tort claims. The plain language of the [*Mensing*] decision compels the same result here." *Id.*

The U.S. Supreme Court addressed whether federal law preempts design-defect claims brought against generic-drug manufacturers under state law in *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013). The lower court held that design-defect claims against generic-drug manufacturers were not preempted by *Mensing* because the manufacturer could comply with both state and federal law by simply choosing not to sell the medication. *Bartlett*, 133 S. Ct. at 2470. The Supreme Court rejected this reasoning. *Id.* The Court explained that generic-drug manufacturers are prohibited from changing the composition of their drugs because "the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* at 2475 (citation omitted). Thus, the only way for the manufacturer to escape liability would be to strengthen or alter the drug's warning, which was prohibited by federal law as explained in *Mensing*. *Id.* As a result, the Court held that state-law-design-defect claims "that place a duty on manufacturers to render a drug safer by either altering its composition or altering its labeling are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition or labeling," and are thus preempted. *Id.* at 2479.

The Sixth Circuit applied *Bartlett* to state-law-design-defect claims in *Strayhorn v. Wyeth Pharmaceuticals, Inc.*, 737 F.3d 378 (6th Cir. 2013). *Strayhorn* involved seven consolidated cases against a generic-drug manufacturer in which plaintiffs sought compensation for injuries related to their usage of the drug. *Id.* at 389-90. The court recognized that all of plaintiffs' claims were subsumed within the Tennessee Product Liability Act (just like here with the Kentucky PLA). *Id.* at 392 ("The TPLA governs all of the plaintiffs' claims because the claims

were brought for or on account of personal injury resulting from the design, warning, instruction, marketing, packaging, and labeling of metoclopramide."). After a detailed analysis of *Mensing* and *Bartlett*, as well as Tennessee product liability law, the court affirmed the trial court's dismissal of the plaintiff's failure-to-warn and design-defect claims, holding that the claims were preempted by federal law. *Id.* at 388-93, 396. Specifically, the court noted that "[t]o the extent that the plaintiffs allege that the drug itself should have been modified to conform to the properties described in the label, generic manufacturers are prohibited by their federal duty of sameness from designing their drugs differently from the [listed drug]." *Id.* at 396 (citation omitted).

After a review of the relevant case law, the Court concludes that federal law preempts Mitchell's failure-to-warn claim under the PLA. To the extent Mitchell alleges that LPI should have changed the labeling on its levetiracetam tablets to better reflect the potential dangers or side effects posed by the drug, her claim is preempted. Federal law prohibits LPI from unilaterally altering the labels of its generic drug and, therefore, it is impossible for LPI to comply with both its state and federal duties. *See Mensing*, 564 U.S. at 613, 618-19; *see also* 21 U.S.C. § 355 (j)(2)(A)(v). Mitchell's design-defect claim is similarly preempted by federal law. To the extent Mitchell alleges that LPI should have altered the design of its levetiracetam tablets, such alteration is prohibited by federal law. *See Bartlett*, 133 S. Ct. at 2475; *see also* 21 U.S.C. § 355(j)(2)(A)(ii)-(iv).

Mitchell is no stranger to this Court. This Court has previously dismissed three *pro se* complaints filed by her against other generic-drug manufacturers on the same grounds. *See Mitchell v. Qualitest Pharms.*, No. 5:15-CV-148-TBR, 2016 U.S. Dist. LEXIS 60332 (W.D. Ky. May 6, 2016) (alleging damages related to an addiction to generic hydrocodone bitartrate and

acetaminophen); *Mitchell v. Actavis Pharms.*, No. 5:15-CV-147-TBR, 2016 U.S. Dist. LEXIS 60331 (W.D. Ky. May 6, 2016) (alleging decreased libido caused by generic diazepam); *Mitchell v. Sandoz Inc.*, No. 5:14-CV-00018, 2014 U.S. Dist. LEXIS 130891 (W.D. Ky. Sept. 18, 2014) (alleging a gastrointestinal bleed caused by generic enoxaparin sodium injections). This case is no different.

## V. CONCLUSION

For the reasons above, Defendant's Motion to Dismiss (DN 8) is **GRANTED**. Additionally, the Court certifies that an appeal of this matter is frivolous and not taken in good faith. *Callihan v. Schneider*, 178 F.3d 800, 803 (6th Cir. 1999); Fed. R. App. P. 24(a)(3)(A).

**Greg N. Stivers, Judge**
**United States District Court**
November 9, 2016

cc: counsel of record
Plaintiff, *pro se*